IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| KAREN POOLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:19-CV-23-Z-BR |
| | § | |
| AXA EQUITABLE LIFE INSURANCE COMPANY, AXA EQUITABLE AGRIFINANCE, LLC, and BRAD COTTRELL, Individually, | § § § § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendant AXA Equitable Life Insurance Company ("AXA Life Insurance") and Defendant AXA Equitable AgriFinance, LLC's ("AXA AgriFinance") (collectively, "Lender Defendants") Motion to Dismiss. (ECF 7). Plaintiff Karen Poole ("Poole") filed a response (ECF 13), to which the Lender Defendants replied (ECF 16). For the reasons explained below, the Court recommends that the Motion to Dismiss be GRANTED.

**I. BACKGROUND**

On December 31, 2018, Poole filed her Original Petition in the 69th Judicial District Court of Dallam County, Texas. (ECF 1-3 at 7–12). Poole's Original Petition brings claims of slander of title, fraud/misrepresentation, negligence, conversion, aiding and abetting breaches of fiduciary duties, and tortious interference with contracts against the Lender Defendants and Brad Cottrell ("Cottrell"). (*Id.*). The Lender Defendants' Motion to Dismiss does not seek dismissal of Poole's claims against Cottrell.

Poole's Original Petition states Entrania Springs Limited Partnership ("Entrania Springs") is "a Texas Limited Partnership whose main asset consists of ranch/farm land [—i.e., the Entrania Springs property—] primarily located in Dallam County." (*Id.* at 8). Poole—a limited partner of Entrania Springs—owns "99% of Entrania Springs." (*Id.*). Poole IV, Inc. ("Poole IV")—the general partner of Entrania Springs—owns "[t]he remaining 1% of Entrania Springs." (*Id.*). Poole—a director of Poole IV—also owns "50% of Poole IV." (*Id.*). Consequently, Poole allegedly owns a total of "99.5% of Entrania Springs." (*Id.*).

In 2017, Defendant AXA Life Insurance allegedly loaned $9,900,000.00 to Poole IV "without [Poole's] knowledge [or] consent." (*Id.*). Defendant AXA Life Insurance used the Entrania Springs property as "collateral" to secure the loan through a lien. (*Id.*). Defendant AXA AgriFinance is the servicer of the loan, and Cottrell is the "local AXA [AgriFinance] agent who worked with Poole IV to acquire the loan." (*Id.*). The Lender Defendants allegedly knew that "[Poole] owned 99.5% of Entrania Springs" and "[Poole] had not consented to the loan or to using [the] Entrania Springs [property] as collateral for the loan." (*Id.* at 9). The Lender Defendants allegedly "conspired with the ½% owners of Entrania Springs to make the loan and use [Poole's] interests [in the Entrania Springs property] as collateral." (*Id.*). Poole also claims the Lender Defendants made the secured loan without her knowledge or consent. (*Id.*). "No partner of Entrania Springs—including the general partner, Poole IV—had the authority to pledge [the] Entrania Springs [property] as collateral to any loan without [Poole's] authority." (*Id.*).

Among other things, Poole claims that "[Defendant] Cottrell, and the AXA entities he represents, made material statements that were false, and those statements resulted in the $9,900,000.00 encumbrance on [Poole's interests in the] Entrania Springs property" and "[t]he statements were made knowing that they were false and to induce action on the false statements."

(*Id.* 9). Poole further alleges that each and every Defendant knew that "the borrowers on the $9,900,000.00 loan at issue did not have the authority to encumber the Entrania Springs real property," that "the board of directors of Poole IV and the partners in Entrania Springs . . . owed [Poole] fiduciary duties," and that "making the loan—[and] thereby encumbering the Entrania Springs real property—was to the detriment of [Poole] and a breach of fiduciary duties owing to [Poole]" because "[Poole] did not consent to the loan." (*Id.* at 10–11). On February 4, 2019, Defendant AXA Life Insurance removed the case to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, on the basis of diversity of citizenship. (ECF 1). Defendant AXA Life Insurance subsequently filed an Amended Notice of Removal. (ECF 29).

On February 11, 2019, the Lender Defendants filed their Motion to Dismiss and brief in support. (ECF 7–8). The Lender Defendants argue Poole's claims should be dismissed because (1) Poole's claims are barred by collateral estoppel and res judicata due to a previous state court suit[1], and (2) Poole's Original Petition cannot satisfy the Federal Rule of Civil Procedure 12(b)(6) standard because the petition fails to state a claim upon which relief can be granted.

## II. STANDARD OF REVIEW

Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the

---

[1] "The rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). Generally, a res judicata argument is an affirmative defense that should not be the basis for a 12(b)(6) dismissal. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, n.8 (5th Cir. 2016) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461, n.9 (5th Cir. 2007)). Assuming res judicata's elements are apparent on the face of the pleadings, the Court could likely consider the Lender Defendants' res judicata and collateral estoppel arguments at this stage. However, the Court declines to do so because it is dismissing Poole's claims on other grounds. *See Wilson v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc.*, No. 3:18-CV-0854-D, 2019 WL 175078, at n.2 (N.D. Tex. Jan. 10, 2019) (observing this District's treatment of res judicata arguments at the motion to dismiss stage, declining to analyze any such arguments, and dismissing claims for failure to meet the Rule 12(b)(6) standard).

light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" *Ruiz v. Brennan*, 851 F.3d 464, n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 555–56, "Factual allegations must be enough to raise a right to relief above the speculative level . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### III. <u>ANALYSIS</u>

#### 1. SLANDER OF TITLE

"'Slander of title' consists of a 'false and malicious statement made in disparagement of a person's title to property which causes special damages.'" *Allen-Pieroni v. Pieroni*, 535 S.W.3d 887, 887 (Tex. 2017) (quoting *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, 223 S.W.3d 1, 20 (Tex. App.—El Paso 2005, pet. denied)). In order to state a claim for slander of title under Texas law, a plaintiff must allege six elements:

(1) the uttering and publishing of disparaging words;

>    (2) that are false;
>
>    (3) that were malicious;
>
>    (4) that special damages were sustained thereby;
>
>    (5) that the claimant possessed an estate or interest in the property disparaged; and
>
>    (6) loss of a specific sale as a result of the slander.

*Henley v. JP Morgan Chase Bank*, No. 3:10-CV-1344-P, 2010 WL 11619016, at *2 (N.D. Tex. Dec. 22, 2010) (quoting *Hillwood Enters., L.P. v. Intel Corp.*, No. 4:08CV112, 2010 WL 652821, at *2 (E.D. Tex. Feb. 23, 2010)).

Poole's Original Petition alleges the Lender Defendants communicated to a third person an untrue statement disparaging her title to the Entrania Springs property, the communication caused her to suffer actual damages, and the Lender Defendants' lien on her title to the Entrania Springs property constitutes a slander of title. However, Poole's slander of title claim is insufficiently pleaded because the Original Petition lacks any allegation that the Lender Defendants maliciously communicated a disparaging false statement to another, that Poole thereby suffered special damages, or that Poole suffered the loss of a specific sale as a result. Poole's Original Petition fails to state a slander of title claim against the Lender Defendants.

### 2. FRAUD/MISREPRESENTATION

"Fraud by misrepresentation requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 801 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)). To state a claim of fraud by misrepresentation under Texas law, a plaintiff must allege five elements:

5

      (1) a misrepresentation that;

      (2) the speaker knew to be false or made recklessly;

      (3) with the intention to induce the plaintiff's reliance, followed by;

      (4) actual and justifiable reliance; and

      (5) causing injury.

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Fraud claims are subject to a heightened pleading standard under Rule 9(b). *Lyons v. Am.'s Wholesale Lender*, No. 3:13-CV-2608-B, 2014 WL 12640238, at *5 (N.D. Tex. Apr. 15, 2014). "Rule 9(b) requires 'a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 678 (N.D. Tex. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)). "More colloquially, plaintiffs must plead the 'who, what, when, where, and how' of the fraud." *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, No. 3:17-CV-1147-D, 2019 WL 329545, at *5 (N.D. Tex. Jan. 25, 2019) (quoting *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)).

      Poole's Original Petition claims the Lender Defendants knowingly made false statements, the statements were made to induce action, the statements resulted in the lien on the Entrania Springs property, and the statements damaged her. Poole's fraud by misrepresentation claim is insufficiently pleaded because the Original Petition lacks any allegation that the Lender Defendants made any false statement to Poole that she actually and justifiably relied on to her detriment. Moreover, because the Original Petition is silent as to the what, when, where, and how

of the allegedly false statements, Poole's fraud by misrepresentation claim fails to satisfy Federal Rule of Civil Procedure 9(b)'s particularity requirement. Poole's Original Petition fails to state a fraud by misrepresentation claim against the Lender Defendants.

### 3. NEGLIGENCE

To prevail on a negligence claim under Texas law, a plaintiff must show four essential elements:

(1) a legal duty owed to the plaintiff by the defendant;

(2) a breach of that duty;

(3) an actual injury to the plaintiff; and

(4) a showing that the breach was the proximate cause of the injury.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 314 (5th Cir. 2002) (quoting *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997)).

Poole's Original Petition claims the Lender Defendants owed her a duty not to commit any torts against her, the Lender Defendants breached their duty when they encumbered her interest in the Entrania Springs property without her knowledge or consent, and the Lender Defendants worked together to encumber her interest in the Entrania Springs property. Poole's conclusory allegation that the Lender Defendants owed her a duty to not commit any torts against her fails to plausibly suggest what particular legal duty the Lender Defendants owed her under Texas law. *See Wilson v. Wells Fargo Bank*, No. 3:13-CV-2257-O, 2014 WL 815352, at *11 (N.D. Tex. Mar. 3, 2014) ("Plaintiff's conclusory allegation that Defendant committed negligence cannot plausibly entitle him to relief because he fails to specify the legal duty that Defendant owed him[.]"); *cf. Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997) ("Tort liability depends on both the existence of and the violation of a duty."); *Texas Laurel Ridge Hosp., L.P. v. Almazan*,

374 S.W.3d 601, 608 (Tex. App.—San Antonio 2012, no pet.) ("A 'tort' is '[a] civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another.'" (alteration in original) (quoting Black's Law Dictionary 1526 (8th ed. 2004)).

Additionally, under Texas law, "[l]enders and their agents ordinarily have no fiduciary duty to borrowers or putative borrowers." *Hopkins v. Wells Fargo Bank, N.A.*, No. 3:10-CV-1857-D, 2011 WL 611664, at *2 (N.D. Tex. Feb. 18, 2011) (quoting *In re Absolute Res. Corp.*, 76 F. Supp. 2d 723, 734 (N.D. Tex. 1999)). "In order to prove that a fiduciary relationship does exist in such a context, the plaintiff must show extraordinary circumstances such as excessive control and influence by the lender on the borrower's business activities." *Id.* (quoting *In re Absolute Res. Corp.*, 76 F. Supp. 2d at 734). Poole's Original Petition fails to state a negligence claim against the Lender Defendants.

### 4. CONVERSION

"Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights." *Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386 (Tex. App.—Houston [14th Dist.] 2015, no pet.). To succeed on a conversion claim under Texas law, a plaintiff must prove the following four elements:

(1) [s]he legally possessed the property or was entitled to it;

(2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff;

(3) the plaintiff demanded the property's return; and

(4) the defendant refused.

8

*United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012) (quoting *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009)).

Poole's Original Petition states she is the beneficial owner of 99.5% of Entrania Springs (the entity), she is the beneficial owner of 99.5% of the Entrania Springs property (the ranch/farm land), she owned, had legal possession of, or was entitled to possess the property, the Lender Defendants assumed and exercised dominion and control over the property to the exclusion of and inconsistent with her rights, she has made demands for the property, and the Lender Defendants have refused to return the property to her. It is unclear from the Original Petition whether Poole alleges that the Lender Defendants converted her ownership rights in Entrania Springs or her real estate interests in the Entrania Springs property. To the extent Poole alleges the former, her conversion claim is insufficiently pleaded because the Original Petition lacks any allegation that her ownership rights in Entrania Springs were merged into a document that was later converted by the Lender Defendants. *See D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 212 (5th Cir. 2018) ("There is no cause of action under Texas law for 'conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted.'" (quoting *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex. App.—Dallas 2001, no pet.)). To the extent Poole alleges the latter, her conversion claim fails as a matter of law because Texas does not recognize a cause of action for conversion of real property. *See Corral-Lerma v. Border Demolition & Envtl. Inc.*, 467 S.W.3d 109, 124 (Tex. App.—El Paso 2015, pet. denied) ("Texas does not recognize conversion claims for real property."). Poole's Original Petition fails to state a conversion claim against the Lender Defendants.

## 5. AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES

"Texas recognizes a cause of action for aiding and abetting a breach of fiduciary duty." *Floyd v. Hefner*, 556 F. Supp. 2d 617, 654 (S.D. Tex. 2008). A plaintiff must establish three elements to establish a claim for aiding and abetting a breach of fiduciary duty under Texas law:

(1) the existence of a fiduciary relationship;

(2) that the third party knew of the fiduciary relationship; and

(3) that the third party was aware that it was participating in the breach of that fiduciary relationship.

*Janvey v. Proskauer Rose LLP*, No. 3:13-CV-0477-N, 2015 WL 11121540, at *7 (N.D. Tex. June 23, 2015) (quoting *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)). "An additional element of an aiding and abetting claim is that the aider gave 'substantial assistance and encouragement to [the] wrongdoer in a tortious act.'" *Id.* at *6 (alteration in original) (quoting *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied)).

Poole's Original Petition states the Lender Defendants knew that the borrowers of the loan at issue did not have the authority to encumber the Entrania Springs property, knew that Poole was the beneficial owner of 99.5% of the Entrania Springs property, knew that Poole IV's board of directors and the partners in Entrania Springs owed Poole fiduciary duties, knew that making the loan—and thereby encumbering the Entrania Springs property—was to Poole's detriment and a breach of fiduciary duties owing to Poole, and knew Poole did not consent to the loan. These allegations are insufficient to plausibly show that by making the loan the Lender Defendants gave Poole IV or the partners in Entrania Springs substantial assistance and encouragement in the breach

of any fiduciary duty owed to Poole. Poole's Original Petition fails to state a claim for aiding and abetting breaches of fiduciary duties against the Lender Defendants.[2]

### 6. TORTIOUS INTERFERENCE WITH CONTRACTS

"[A] party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract." *N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 635 (N.D. Tex. 2015) (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 794–95 (Tex. 1995)). To establish a tortious interference with contracts claim under Texas law, a plaintiff must plead four elements:

(1) the existence of a contract subject to interference;

(2) willful and intentional interference;

(3) that proximately causes damage; and

(4) actual damage or loss.

*MCVonnect, LLC v. Recovery Database Network, Inc.*, No. 3:10-CV-1948-F, 2011 WL 13128800, at *2 (N.D. Tex. Nov. 4, 2011) (citing *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 489 (5th Cir. 2008)). "To establish proximate cause [for a tortious interference claim], a party must show that 'the defendant took an active part in persuading a party to a contract to breach it.'" *Amigo Broad.*, 521 F.3d at 493 (quoting *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied)). "Merely entering into a contract with a party with the knowledge of

---

[2] Poole also alleges the Lender Defendants conspired with the ½% owners of Entrania Springs to make the $9,900,000.00 loan and use Poole's interests in the Entrania Springs property as collateral. However, that allegation is entirely conclusory and insufficient to plausibly show that by making the loan the Lender Defendants gave Poole IV or the partners in Entrania Springs substantial assistance and encouragement in the breach of any fiduciary duty owed to Poole. *Cf. Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 631–32 (5th Cir. 1999) ("[A] general allegation of conspiracy without a statement of the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action." (quoting *McClenaghan v. Union Stock Yards Co. of Omaha*, 298 F.2d 659, 663 (8th Cir. 1962)).

that party's contractual obligations to someone else is not the same as inducing a breach." *Id*. (quoting *Davis*, 839 S.W.2d at 139).

Poole's Original Petition states she is a party to the Entrania Springs partnership agreement and the Poole IV articles of incorporation and bylaws, the Lender Defendants engaged in a willful or intentional act of interference with the two foregoing contracts, the Lender Defendants' acts were the proximate cause of injury to her, and the injury resulted in actual damage or loss to her. As an initial matter, Poole's tortious interference with contracts claim is insufficiently pleaded because the Original Petition alleges the Lender Defendants engaged in a willful *or* intentional act of interference with contracts rather than a willful *and* intentional act of interference with contracts. Additionally, Poole's allegations are insufficient to plausibly show that the Lender Defendants took an active part in persuading any party to the Entrania Springs partnership agreement or the Poole IV articles of incorporation and bylaws to breach those contracts. Poole's Original Petition fails to state a tortious interference with contracts claim against the Lender Defendants.

## IV. **RECOMMENDATION**

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Lender Defendants' Motion to Dismiss (ECF 7) be GRANTED. In this District, plaintiffs are generally allowed at least one opportunity to cure pleading deficiencies if such deficiencies may be cured through amendment. *See Wilson v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc.*, No. 3:18-CV-0854-D, 2019 WL 175078, at *8 (N.D. Tex. Jan. 10, 2019).

Because Poole's claims against the Lender Defendants can potentially be cured through amendment, the undersigned recommends Poole's claims be dismissed without prejudice. Poole may either: (1) use the 14-day period for filing objections to file an amended complaint, in which

case the undersigned will withdraw these Findings, Conclusions, and Recommendation, or (2) file objections to these Findings, Conclusions, and Recommendation. If Poole files an amended complaint, the Lender Defendants may move anew to dismiss if they have grounds to do so.

## V. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 4, 2019.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).